# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARDIA VASQUEZ,<br><br>Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC,<br><br>Defendant. | Case No.  1:21-cv-01099-DAD-SAB<br><br>ORDER DENYING PLAINTIFF'S REQUEST TO SEAL<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES; DENYING PLAINTIFF'S MOTION TO COMPEL FURTHER RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS; AND DENYING MOTION FOR SANCTIONS<br><br>ORDER VACATING MAY 25, 2022 HEARING<br><br>(ECF Nos. 20, 21, 22, 23) |

## I.

## INTRODUCTION

Currently before the Court are Plaintiff Wardia Vasquez's ("Plaintiff") dual motions to compel further responses to interrogatories and requests for production of documents pursuant to Federal Rules of Civil Procedure 33, 34, and 37 and Plaintiff's related request to seal documents, filed concurrently with her discovery motions.  (ECF Nos. 20, 21, 22.)  Plaintiffs' first motion to compel seeks an order compelling Defendant O'Reilly Auto Enterprises, LLC ("Defendant") to

1

produce further responses to her Interrogatories Nos. 49–52.  (ECF No. 21.)  Plaintiff's second motion to compel seeks an order compelling Defendant to produce all relevant documents responsive to her Requests for Production Nos. 80 and 83.  (ECF No. 22.)  Plaintiff also seeks sanctions in the total amount of $4,865.00, for the time required to prepare both motions.  (ECF No. 23.)  Plaintiff's related request to seal pertains to three exhibits filed in support of Plaintiff's motions to compel.  (ECF No. 20.)  On May 16, 2022, the parties submitted their joint statements with respect to the instant discovery disputes, concurrently with the instant motions to compel.[1] (ECF Nos. 21-1, 22-1.)

Having considered the joint statements regarding the discovery disputes, the separately filed declarations and the exhibits attached thereto, as well as the Court's file, the Court finds this matter suitable for decision without oral argument.  See Local Rule 230(g).  Thus, the hearing set for May 25, 2022, will be vacated and the parties will not be required to appear at that time.  For the reasons discussed herein, the Court issues the following order denying Plaintiff's request to seal; granting the motion to compel further responses pertaining to Special Interrogatories, Nos. 49–52; denying the motion to compel further responses pertaining to Requests for Production Nos. 80 and 83; and denying the related request for sanctions at this time, without prejudice.

## II.

## BACKGROUND

### A.    Factual Background and Pleading Allegations

This is a wrongful termination lawsuit.  Plaintiff previously worked as an assistant store manager at one of the California stores operated by Defendant O'Reilly Auto Enterprises, LLC ("Defendant").  Defendant operates approximately 575 auto parts stores in California.  Each store has a store manager and is part of a "district," run by a district manager.  Plaintiff's former store is part of District 532, which has nine stores.

Plaintiff was laid off as part of a nationwide Reduction in Force ("RIF").  The termination decision was based on a number of factors, including one subjective factor, a "culture rating"

---

[1] The parties' joint statements were filed concurrently with the motions to compel; therefore, the hearing was permissibly set for May 25, 2022, pursuant to Local Rule 251.  E.D. Cal. L.R. 251(a).

assigned to each employee by the district manager.  Plaintiff was given a culture rating of 1 out of 5, and had a total overall "score" of 26 out of 50 points.  This was the lowest score in Plaintiff's store, the next-lowest being a score of 29, so Plaintiff was terminated.  In Plaintiff's store, and purportedly most other stores, only the single lowest-scoring employee was terminated.  Plaintiff contends that if she had received a culture rating of 5, she would not have been the lowest-scoring employee and would not have been terminated.

The culture score is purportedly based on how well the employee fits in with Defendant's goals for the company culture; thus, it is an inherently subjective measure and highly susceptible to illegal bias if the decisionmaker has those biases.  Here, Plaintiff alleges her district manager, Marc Miramontez,[2] was biased against Plaintiff due to her age, and gave Plaintiff the lowest possible culture score due to his "ageist animus."  Therefore, Plaintiff claims her termination was substantially motivated by age discrimination.

### B.    Procedural Background and Discovery Dispute

Plaintiff filed this action in the Stanislaus Superior Court on November 13, 2020.  (ECF No. 1-1.)  On July 19, 2021, Defendants removed the action to federal court.  (ECF No. 1.)  On September 10, 2021, the parties filed a stipulated notice of dismissal as to Mr. Miramontez and he was dismissed from the action.  (ECF Nos. 5, 6.)  A scheduling order was issued on October 5, 2021, and has been modified twice.  (ECF Nos. 11, 17, 19.)  As relevant to the instant discovery disputes, the modified schedule provides that non-expert discovery closes on September 2, 2022, and expert discovery closes on October 7, 2022.  (ECF No. 19.)  On October 6, 2021, the Court entered a protective order to which the parties had stipulated.  (ECF No. 14.)

On November 30, 2021, prior to removal, Plaintiff served Special Interrogatories ("SI"), Set Two, and Requests for Production ("RPD"), Set Three.  (See ECF No. 21-1 at 5; ECF No. 22-1 at 5.)  Defendant served responses to Plaintiff's SIs and RPDs on January 20, 2022, which Plaintiff deemed deficient for the reasons discussed herein.

On February 17, 2022, Plaintiff sent a meet and confer letter regarding several disputed

---

[2] Mr. Miramontez was formerly a named defendant in this action.  As noted herein, Mr. Miramontez was dismissed on September 13, 2021.  (ECF No. 6.)

1  SIs.  (ECF No. 21-1 at 12.)  On March 4, 2022, Defendant served supplemental responses to some

2  of the SIs, but not any of the at-issue SIs (Nos. 49–52).  (Id.)  On March 9, 2022, Plaintiff took

3  Mr. Miramontez's deposition.  At this time, defense counsel instructed Mr. Miramontez not to

4  disclose any names that were redacted in discovery.  (ECF No. 22-1 at 9.)

5      On March 24, 2022, Plaintiff sent a meet and confer email regarding her continued dispute

6  with SI Nos. 49–52, and the redactions in the documents produced in response to RPD Nos. 80

7  and 83.  (ECF No. 21-1 at 12; ECF No. 22-1 at 9.)  On March 31, 2022, the parties met and

8  conferred telephonically; the parties successfully resolved some issues, but not the issues

9  regarding the identified SIs or RPDs.  (ECF No. 21-1 at 12; ECF No. 22-1 at 10.)

10      On May 16, 2022, Plaintiff filed the instant joint statements/motions to compel further

11  responses to SI Nos. 49–52 and RPD Nos. 80 and 83, seeking monetary sanctions in the total

12  amount of $4,865.00.  (ECF Nos. 21, 22.)

13                                 **III.**

14                        **REQUEST TO SEAL**

15      As an initial matter, the Court addresses Plaintiff's related request to seal documents, filed

16  concurrently with her motions to compel.  (ECF No. 20.)  The request pertains to three exhibits

17  filed in support of Plaintiff's motions to compel, which were produced in litigation by Defendant

18  O'Reilly Auto Enterprises and marked as confidential pursuant to the parties' stipulated

19  protective order, entered by the Court on October 6, 2021.  (See ECF No. 13.)  For the reasons

20  discussed herein, Plaintiff's request shall be denied at this time, without prejudice.

21      **A.    Legal Standard**

22      There is a presumption in favor of public access to court records.  See Phillips ex rel.

23  Estates of Byrd v. Gen. Motors Corp. (Phillips), 307 F.3d 1206, 1210 (9th Cir. 2002).  However,

24  "access to judicial records is not absolute."  Kamakana v. City & Cnty. of Honolulu, 447 F.3d

25  1172, 1178 (9th Cir. 2006).  Two standards govern whether documents should be sealed: a

26  "compelling reasons" standard, and a "good cause" standard.  Id. at 1179; Pintos v. Pac. Creditors

27  Ass'n, 605 F.3d 665, 677–78 (9th Cir. 2010).  The "good cause" and "compelling reasons"

28  standards should not be conflated; a "good cause" showing will not, without more, satisfy the

"compelling reasons" test.  Kamakana, 447 F.3d at 1180.

Generally, the compelling reasons standard is applied.  See Ctr. for Auto Safety v. Chrysler Grp., LLC (Auto Safety), 809 F.3d 1092, 1096–97 (9th Cir. 2016), cert. denied sub nom. FCA U.S. LLC v. Ctr. for Auto Safety, 137 S. Ct. 38 (2016).  Under the compelling reasons standard, the party seeking to have a document sealed must articulate compelling reasons supported by specific factual findings; it must identify the interests that favor secrecy; and it must show that these specific interests outweigh the general history of access and the public policies favoring disclosure, such as the public's interest in understanding the judicial process. Kamakana, 447 F.3d at 1179–81.  The Ninth Circuit has indicated that " 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.' "  Id. at 1179 (citing Nixon v. Warner Commc'ns Inc., 435 U.S. 589, 597 & n.7 (1978)).  "[S]ources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal," as may pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage.  See Apple Inc. v. Samsung Elecs. Co., 727 F.3d 1214, 1221–22, 1225 (Fed. Cir. 2013) (quoting Nixon, 435 U.S. at 597–98).  On the other hand, "[t]he mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records."  Kamakana, 447 F.3d at 1179 (citing Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1136 (9th Cir. 2003)).  Nor is the fact that the parties have agreed to keep information confidential.  See generally, Foltz, 331 F.3d 1122.  Indeed, "[s]imply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden."  Kamakana, 447 F.3d at 1184.  Rather, a party must "articulate compelling reasons supported by specific factual findings."  Id. at 1178 (citations omitted).

The "good cause" standard is an exception that the Ninth Circuit "carved out . . . for sealed materials attached to a discovery motion unrelated to the merits of a case" or documents

only tangentially related to the underlying cause of action.  Auto Safety, 809 F.3d at 1097; see also Kamakana, 447 F.3d at 1179–80 (a "particularized showing" under the "good cause" standard of Rule 26(c) will "suffice [] to warrant preserving the secrecy of sealed discovery material attached to non-dispositive motions.").  While it "presents a lower burden for the party wishing to seal documents than the 'compelling reasons' standard," Pintos, 605 F.3d at 678, the party seeking protection nevertheless bears the burden of showing specific prejudice or harm will result, Phillips, 307 F.3d at 1210–11, and must make a "particularized showing of good cause with respect to any individual document," San Jose Mercury News, Inc. v. U.S. Dist. Ct., 187 F.3d 1096, 1103 (9th Cir. 1999) (citations omitted).  For example, a "particularized showing" that public disclosure would cause "annoyance, embarrassment, oppression, or an undue burden" will suffice to seal non-dispositive records.  Fed. R. Civ. P. 26(c)(1); Kamakana, 447 F.3d at 1180. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," however, are insufficient.  Phillips, 307 F.3d at 1211 (quoting Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir. 1992)).

Additionally, Local Rule 141 provides that requests to seal shall set forth: (1) the statutory or other authority for sealing; (2) the requested duration; (3) the identity, by name or category, of persons to be permitted access to the documents; and (4) all other relevant information.  E.D. Cal. L.R. 141(b).  Finally, any request to seal documents must be "narrowly tailored" to remove from the public sphere only the material that warrants secrecy.  See, e.g., Ervine v. Warden, 241 F. Supp. 3d 917, 919 (E.D. Cal. 2016) (citing Press-Enterprise Co. v. Superior Ct. of Cal., 464 U.S. 501 (1986)).  To the extent any confidential information can be easily redacted while leaving meaningful information available to the public, the Court must order that redacted versions be filed rather than sealing entire documents.  See Foltz, 331 F.3d at 1137; see also In re Roman Catholic Archbishop of Portland in Or., 661 F.3d 417, 425 (9th Cir. 2011) ("a court must still consider whether redacting portions of the discovery material will nevertheless allow disclosure.").  "[I]f the court decides to seal certain judicial records, it must . . . articulate the factual basis for its ruling, without relying on hypothesis or conjecture.' " Kamakana, 447 F.3d at 1179 (quoting Hagestad v. Tragesser, 49 F.3d 1430, 1434 (9th Cir. 1995)); see also Apple Inc. v.

1   <u>Psystar Corp.</u>, 658 F.3d 1150, 1162 (9th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 2374 (2012).

2   **B.      Analysis**

3      Plaintiff requests to seal three exhibits of documents produced as "confidential" by

4   Defendant and submitted in support of Plaintiff's motions to compel: (1) worksheets with data

5   regarding selection of employees for layoff (12 pages); (2) an email from Marc Miramontez about

6   Plaintiff and her coworkers (2 pages); and (3) an email from Marc Miramontez about Plaintiff's

7   coworkers (1 page). (ECF No. 20 at 2.) Plaintiff proffers the basis for sealing the documents is

8   that Defendant indicated they contain its confidential business information. (<u>Id.</u>) More

9   specifically, Plaintiff proffers the documents contain information about employees being

10  subjected to formal progressive discipline processes, as well as objective and subjective

11  assessments of employees, and financial information, which Plaintiff presumes Defendant

12  originally marked as confidential to protect the confidentiality of its business processes and

13  management decisions. (<u>Id.</u>) Plaintiff further proffers that, pursuant to the terms of the protective

14  order, she cannot file these documents publicly. (<u>Id.</u>) Accordingly, Plaintiff requests the

15  documents sealed, and remain so, for "as long as the Court maintains a copy of them." (<u>Id.</u>)

16  While Plaintiff does not directly address which standard governs the instant request to seal, a

17  review of the proposed order (ECF No. 20 at 4) suggests Plaintiff is applying the good cause

18  standard.

19     The Court notes that Plaintiff does not directly contend the good cause standard should be

20  applied here or present argument or authority in support of this position. However, the "good

21  cause" standard appears likely to apply to the instant request, as the attached documents were

22  submitted in support of Plaintiff's discovery motions, which are non-dispositive. <u>See</u> <u>Kamakana</u>,

23  447 F.3d at 1179–80. Nonetheless, even under the lower burden of the "good cause" standard,

24  the Court finds Plaintiff has not made a sufficient showing to warrant sealing the identified

25  documents.

26     While the request to seal asserts the exhibits were marked confidential to protect the

27  confidentiality of Defendant's business processes and management decisions, which includes

28  information about employees and financial information, it does not make any "particularized

showings" or provide any further elaboration with respect to each of the three discrete exhibits. Kamakana, 447 F.3d at 1180.  For example, as to the statement about employee information (which applies only to the worksheet), with the exception of a single employee name[3] (Bates-stamped O'Reilly 001251), all of the names and portions of each employee team number are already redacted.  The Court can discern no other personal identifying information listed on the spreadsheet regarding these employees.  Similarly, the email exhibits only reference certain employees, including Plaintiff, by their first name.  On this basis, the Court does not find any privacy concerns warranting sealing the documents in their entirety.

Nor does Plaintiff indicate which portions of each exhibit would reveal legitimate trade secrets.  See Intermotive, Inc. v. Inpower, Inc., No. 2:05-cv-00844-KJM-GGH, 2012 WL 5523280, at *1 (E.D. Cal. Nov. 14, 2012) (denying motion to seal settlement agreement on this basis).  Plaintiff's general reference to "financial information" appears to apply to only a single page of the worksheet (Bates-stamped O'Reilly 001260), with respect to columns titled "Prv Month Productivity" and "Rolling 12 Avg Productivity," as these values relate to each employee listed on the spreadsheet.  But again, no "particularized showings" are made in support of the contention that trade secrets are contained in any of the three submitted exhibits.  Similarly, Plaintiff has not made a showing that some specific harm or prejudice will result if the entirety of these three exhibits is not sealed.  Phillips, 307 F.3d at 1210–11.  Thus, the Court finds Plaintiff's entire request conclusory and unsupported.

Furthermore, Plaintiff does not demonstrate that the request to seal is narrowly tailored, nor does she address whether redaction, rather than sealing, is appropriate.  See Foltz, 331 F.3d at 1137; Roman Catholic Archbishop of Portland, 661 F.3d at 425.  The fact that the parties agreed amongst themselves to keep the documents private, without more, is no reason to shield the information from the public at large.  See Foltz, 331 F.3d at 1138 (noting "blanket" protective order obtained "without making a particularized showing of good cause with respect to any individual document," but instead treating all information produced in connection with the

---

[3] No argument has been presented, and the Court can discern none, as to why this single name cannot be redacted with the others, as opposed to sealing the document in its entirety.

discovery process as confidential, is insufficient to presumptively satisfy good cause requirement).  On this record, there are insufficient grounds on which to grant Plaintiff's request to seal.  Accordingly, the Court shall deny Plaintiff's request, without prejudice.

**IV.**

**MOTIONS TO COMPEL**

### A.      Legal Standard

Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Information need not be admissible in evidence to be discoverable.  Id.  "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.

Rules 33 and 34 govern interrogatories and requests for production, respectively.  Under these rules, a party may make a request related to any matter that may be inquired into under Rule 26(b). Fed. R. Civ. P. 33(a)(2); Fed. R. Civ. P. 34(a).

Under Rule 33, each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath.  Fed. R. Civ. P. 33(b)(3).  Grounds for objecting must be stated with specificity and any ground not stated in a timely objection is deemed waived unless the Court otherwise excuses the failure.  Fed. R. Civ. P. 33(b)(4).

Rule 34 of the Federal Rules of Civil Procedure provides that a party may serve upon any other party a request for production of any tangible thing within the party's possession, custody, and control that is within the scope of Rule 26.  Fed. R. Civ. P. 34(a)(1)(B).  The party receiving the request has thirty days in which to respond.  Fed. R. Civ. P. 34(b)(2).

Motions to compel are governed by Rule 37.  A party may move for an order compelling production where the opposing party fails to produce documents as requested under Rule 34.

9

1    Fed. R. Civ. P. 37(a)(3(B)(iv).  Rule 37 provides in pertinent part:

2                  **(a) Motion for an Order Compelling Disclosure or Discovery.**

3                  **(1)** ***In General.*** On notice to other parties and all affected persons, a
                   party may move for an order compelling disclosure or discovery.
4                  The motion must include a certification that the movant has in good
                   faith conferred or attempted to confer with the person or party
5                  failing to make disclosure or discovery in an effort to obtain it
                   without court action.

6

7    Fed. R. Civ. P. 37.  Rule 37 states that "an evasive or incomplete disclosure, answer, or response

8    must be treated as a failure to disclose, answer, or respond."  Fed. R. Civ. P. 37(a)(4).

9          If a motion to compel discovery is granted, the Court must order the "party or deponent

10   whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay

11   the movant's reasonable expenses incurred in making the motion, including attorney's fees"

12   unless: "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or

13   discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was

14   substantially justified; or (iii) other circumstances make an award of expenses unjust."  Fed. R.

15   Civ. P. 37(a)(5)(A).  If the motion is denied, the court must "require the movant, the attorney

16   filing the motion, or both to pay the party or deponent who opposed the motion its reasonable

17   expenses incurred in opposing the motion, including attorney's fees," however the court "must

18   not order this payment if the motion was substantially justified or other circumstances make an

19   award of expenses unjust."  Fed. R. Civ. P. 37(a)(5)(B).  Where the motion is granted in part and

20   denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable

21   expenses for the motion."  Fed. R. Civ. P. 37(a)(5)(C).

22         Furter, if a party fails to obey an order to provide or permit discovery, the court may issue

23   further just orders, which may include: "(i) directing that the matters embraced in the order or

24   other designated facts be taken as established for purposes of the action, as the prevailing party

25   claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or

26   defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or

27   in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or

28   proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or

10

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A).  "Instead of or in addition to the [other sanctions outlined in the Rule,] the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

A party "who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: . . . as ordered by the court." Fed. R. Civ. P. 26(e)(1)(B).  If a party fails to do so, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).  "In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure; (B) may inform the jury of the party's failure; and (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1)(A)-(C).

## B.   Motion to Compel Further Responses to Interrogatories

Plaintiff seeks an order compelling further responses to her SI Nos. 49–52 on the basis that the original, unsupplemented responses are deficient, and Defendant's objections to producing further responses are without merit.  (ECF No. 21.)

### 1.   At-Issue Interrogatories

The text of the at-issue SIs and objections thereto are set forth as follows.

### a.   Interrogatory No. 49

How many other assistant store managers in California who were let go as part of the RIF had:

    a.  An "Evaluation Performance" of 5?

    b.  An "Evaluation Performance" of 5 and a "TM Position Productivity Rating" of 1?

    c.  A "Progressive Discipline / Attendance" rating of 5 and a "TM Position Productivity Rating" of 1?

    d.  An "Evaluation Performance" of 5 and a "Culture Rating" of 1?

    e.  A "Progressive Discipline / Attendance" rating of 5 and a "Culture Rating" of 1?

(ECF No. 21-1 at 6–7.)

**b.**    **Interrogatory No. 50**

How many assistant store managers in California who were not let go as part of the RIF had:

    a.  An "Evaluation Performance" of 5?

    b.  An "Evaluation Performance" of 5 and a "TM Position Productivity Rating" of 1?

    c.  A "Progressive Discipline / Attendance" rating of 5 and a "TM Position Productivity Rating" of 1?

    d.  An "Evaluation Performance" of 5 and a "Culture Rating" of 1?

    e.  A "Progressive Discipline / Attendance" rating of 5 and a "Culture Rating" of 1?

(ECF No. 21-1 at 7.)

**c.**    **Interrogatory No. 51**

How many other assistant store managers in California who were let go as part of the RIF had a 2019 performance evaluation with the following characteristics:

    a.  An overall rating of "Exceeds Requirements"?

    b.  A "Sales Ability" score of "Meets Requirements."

    c.  A monthly sales average of less than $[redacted]?[1]

    d.  A monthly sales average of more than $[redacted]?

    e.  Four stars in all of the categories "Win-win attitude," "Hard Work and Initiative," "Dedicated to PSP – The Main Thing," "O'Reilly Culture," and "Teamwork"

    f.  Every single category with a "star" rating had 3 or 4 stars.

[Fn 1: This particular dollar figure is redacted based on Defendant's concerns about trade secrets.]

(ECF No. 21-1 at 8–9.)

**d.     Interrogatory No. 52**

How many assistant store managers in California who were not let go as part of the RIF had a 2019 performance evaluation with the following characteristics:

    a.   An overall rating of "Exceeds Requirements"?

    b.   A "Sales Ability" score of "Meets Requirements."

    c.   A monthly sales average of less than $[redacted]?

    d.   A monthly sales average of more than $[redacted]?

    e.   Four stars in all of the categories "Win-win attitude," "Hard Work and Initiative," "Dedicated to PSP – The Main Thing," "O'Reilly Culture," and "Teamwork"

    f.   Every single category with a "star" rating had 3 or 4 stars.

(ECF No. 21-1 at 10.)

     2.     <u>Defendant's Objections</u>

With respect to the aforementioned SIs, Defendant provided the following nearly identical responses (with the only differences identified in brackets) and objections, and no further substantive responses:

Objection. Responding Party objects to this interrogatory on the grounds that it is overbroad, compound, irrelevant, not proportional to the needs of the case, violates employee privacy, violates third party privacy, violates the attorney work product doctrine, violates the attorney client privilege, is unnecessarily duplicative of other discovery requests concurrently propounded on Responding Party, [*additional objection to SIs 49 and 50 only*: seeks information equally available to Plaintiff,] vague, ambiguous, unduly burdensome, oppressive, seeks proprietary trade secret information, [*additional objection to SIs 51 and 52 only*: seeks private commercial and financial information,] and calls for a compilation, the expense of which would be identical for propounding party to create from documents concurrently produced. (FRCP 30(d).) Subject to and without waiving the aforementioned objections, Responding Party answers as follows:

Responding Party will produce the RIF data only for District 532. The information sought by this interrogatory is contained in the concurrent document production provided by Responding Party, reference to which is made per FRCP 30(d). The expense and burden of preparing a compilation of all the sought information here would be identical for Plaintiff as for Responding Party. (FRCP 30(d).) As discovery in this case is continuing, Responding Party reserves the right to amend and/or supplement this response.

13

Based on the foregoing objections, no response will be provided. As discovery in this case is continuing, Responding Party reserves the right to amend and/or supplement this response.

(Id. at 6–12.)

### 3.      Parties' Positions

**a.      Plaintiff's Position**

A claim for discrimination can be supported by "direct evidence" (i.e., evidence of bigoted statements by the decisionmaker evidencing age-related bias) as well as "comparator evidence" (i.e., evidence by which Plaintiff may demonstrate she was treated differently than similarly-situated employees who were younger than her).  The instant motions to compel focus on Plaintiff's attempt to obtain the latter type of evidence, and concern the parties' dispute as to whether the at-issue discovery requests reasonably seek such information.

Plaintiff argues there is already evidence supporting her contention that Mr. Miramontez's low culture score of Plaintiff was based on age-based discrimination:

- Mr. Miramontez told Plaintiff he wanted her to switch jobs to installer service specialist because there was a young woman he wanted to promote to assistant store manager so that he could develop her to become a store manager (Mr. Miramontez denies saying this);

- Emails sent by Mr. Miramontez containing age-based discriminatory remarks about Plaintiff and other workers, such as saying Plaintiff "seems VERY complacent. I see she has been with us for a long time but I feel she is tired. I don't sense much passion for the job"; instructing the store manager not to promote another employee, whom he described as an "old school guy just happy where he is"; and instructions to develop three other employees, including "this kid," who "seems to have a high drive/potential"; and

- Of the twenty employees in his district who held positions of either assistant store managers or installer service specialists, Mr. Miramontez gave the worst possible score to only three people, and the best possible score to the remaining seventeen. Those three employees were terminated during the RIF, and those three employees

14

1    had substantially more seniority than everyone else.

2    (ECF No. 21-1 at 14–15.)  However, Plaintiff seeks further evidence that would tend to show Mr.

3    Miramontez was motivated by age-based bias, including: how the RIF in his district compares to

4    how the RIF occurred statewide, and how likely it is that a person with Plaintiff's characteristics

5    and achievements would have been terminated if she had a different district manager.  (ECF No.

6    21-1 at 15.)

7         Plaintiff argues Defendant's willingness to provide only data for her district, and not the

8    entire state, is inadequate because it prevents Plaintiff from comparing herself to other assistant

9    store managers in the state who had different district managers.  Plaintiff asserts she was similarly

10   situated to the statewide assistant managers because they all had the same job title and were

11   scored according to the same RIF criteria, and some of them had the same qualifications, such as

12   sales numbers and great performance evaluations.   Therefore, the data would be relevant.

13   Further, Plaintiff needs the statewide data because it could show that her district manager

14   terminated older workers at a higher rate than occurred in other districts in California, thus

15   tending to support an inference that her district manager was motivated by age-based bias.

16   Because Plaintiff is permitted to compare herself to other people individually or as to groups of

17   people as well as provide statistical evidence to prove disparate treatment, the requested

18   information — which will permit Plaintiff to compare her treatment to the treatment of similarly-

19   situated assistant managers in California — should be produced.  (ECF No. 21-1 at 17.)

20        With respect to Defendant's other objections, Plaintiff argues the requests are not unduly

21   burdensome, where Plaintiff merely seeks a headcount amounting to a total of 22 numbers,

22   because Defendant already tracks the requested information with its HR spreadsheets and can

23   easily look it up.  (ECF No. 21-1 at 19.)  Plaintiff argues she cannot — as Defendant maintains —

24   compile her own spreadsheets, because Defendant has only produced information on Plaintiff's

25   district, and not its stores statewide.  Finally, Plaintiff argues the SIs do not invade privacy,

26   privilege, or trade secret; moreover, the protective order already in place should alleviate such

27   concerns.  (ECF No. 21-1 at 20.)

28   ///

### b. Defendant's Position

In opposition, Defendant disputes Plaintiff's underlying premise that her culture rating score was a substantial factor in her termination.  (ECF No. 21-1 at 21–28.)  Defendant points out Plaintiff was terminated during the RIF due to her *overall* low score, which included sales activity (the most heavily rated category) and productivity, in addition to the culture rating (which was weighted 20% less than the productivity score).  Because Plaintiff could have avoided termination if her sales and productivity scores were higher, Defendant argues Plaintiff's contention that the culture score amounts to good "comparator" evidence is unsupported and therefore not reasonably calculated to lead to admissible evidence.

Furthermore, Defendant argues the data of all employees in Plaintiff's district is sufficient for Plaintiff's RIF analysis, and that statewide employee data is not warranted because there are too many variables.  Therefore, Plaintiff would not be able to use such data for comparison purposes.  In particular, Defendant notes Mr. Miramontez made no contribution to the culture scores assigned in other stores, and not all statewide employees are similarly situated to Plaintiff in terms of job position, conduct/job performance, or subject to supervision under the same decision-maker.  Defendant also maintains it is unknown how culture scores were assigned in the other districts in the state, suggesting a lack of uniformity amongst districts.  Similarly, Defendant notes different district managers likely have different evaluation standards, provide different efforts in conducting accurate evaluations, and may have different discipline standards and practices about when and how to issue discipline or account for attendance violations.  For these reasons as well, Defendant argues the requested statewide data would be meaningless and irrelevant for purposes of comparator evidence.  Finally, Defendant argues whether another district manager held the same alleged age-based animus as Mr. Miramontez in some other store district in California or used the same method of discrimination to provide a low culture score is irrelevant to Plaintiff's claim that she experienced discrimination based on *Mr. Miranontez's* biased conduct.

As to Defendant's other objections, Defendant argues the privacy objection is valid because the Court must apply California privilege law in this diversity case, and California

applies a privilege based on the right to privacy.  On balance, Defendant argues the third parties' privacy rights outweigh the benefit or importance of the requested information to Plaintiff in this litigation.

Defendant argues providing the data Plaintiff seeks on a statewide level would require culling through substantial records.  With respect to SI Nos. 49 and 50, an O'Reilly employee would be required to go through RIF worksheets for each store, find the assistant manager who was laid off/not laid off and then review each interrogatory to evaluate the criteria and provide a response.  With respect to SI Nos. 51 and 52, someone would have to review the evaluations of over 575 employees to evaluate them against the combined 11 subparts in the SIs and determine if they fit the specified criteria; these findings would then need to be audited for accuracy, as Defendant contends errors arising from such a process seem likely.  Defendant argues the entire process would be manual because an electronic analysis is not possible.  Thus, Defendant argues the requests are unduly burdensome.

4.    Ruling

As noted, a party may discover information "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Here, the Court finds Plaintiff has demonstrated the at-issue SIs seek information that is reasonably calculated to lead to admissible evidence.  Plaintiff argues the cumulative data of how the RIF occurred statewide is relevant to show Mr. Miramontez was motivated by age-based bias because it may be used to compare Mr. Miramontez's employee evaluation process with that of other district managers.  If stores within Mr. Miramontez's district tended to terminate more employees over a certain age than stores under the supervision of other district managers, that information may support Plaintiff's claims of discrimination.  Defendant may not foreclose production of statewide information based on its own subjective assessment that store data outside of Plaintiff's district is irrelevant or cannot be used for comparative

1   purposes; Plaintiff must be accorded the opportunity to analyze and extrapolate the information

2   for herself and derive her own spreadsheets and statistical data therefrom.

3       Defendant's objections related to privacy concerns are outweighed by Plaintiff's interest

4   in obtaining relevant evidence.  Moreover, the Court finds any potential privacy concerns are

5   lessened in light of the protective order already in place for this matter.  Defendant's objections

6   that the discovery is unduly burdensome or that Plaintiff is equally capable of creating the

7   spreadsheet-based information she seeks are also unavailing.  Plaintiff cannot create her own

8   spreadsheets at this time because Defendant has not produced any store information beyond that

9   derived from Plaintiff's district.  Furthermore, even if reviewing already existing HR spreadsheets

10  to provide Plaintiff the information she seeks is somewhat burdensome, as discovery often is in

11  employment discrimination cases like the instant matter, the Court finds it is not unduly so,

12  particularly where the burden does not overcome the significant interest Plaintiff has in obtaining

13  statewide information for purposes of her comparator evidence.

14      As a final note, the Court observes that Defendant's objections to the at-issue SIs appear

15  to be boilerplate, as they are nearly identical in response to each SI, and with the result that

16  Defendant did not produce any further responses for any of the at-issue SIs.  The Court

17  admonishes Defendant that boilerplate objections do not suffice and are not well-received by this

18  Court.  See, e.g., Fed. R. Civ. P. 33(b)(4); Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for

19  Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005) (on RPDs, noting boilerplate objections are

20  insufficient to assert a privilege); see also, e.g., Paulsen v. Case Corp., 168 F.R.D. 285, 289 (C.D.

21  Cal. 1996) (finding objections of "overbroad, unduly burdensome, unduly redundant to other

22  discovery, oppressive, calls for narrative. Discovery has only just begun" were general or

23  boilerplate objections, "which are not proper objections."); McLeod, Alexander, Powel & Apffel,

24  P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990) (objections that requests were overly broad,

25  burdensome, oppressive, and irrelevant were insufficient to meet party's burden to explain why

26  discovery requests were objectionable); Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550,

27  1559 (11th Cir. 1985) (conclusory recitations of expense and burdensomeness are not sufficiently

28  specific to demonstrate why discovery is objectionable).

For these reasons, Plaintiff's motion to compel further responses to her SI Nos. 49–52 shall be granted.

### C.   Motion to Compel Further Responses to Requests for Production

The at-issue documents, which were submitted to the Court for review concurrently with Plaintiff's request to seal, include "Reduction In Force Analysis" worksheets for Plaintiff's district (Bates-stamped 1251–59) and spreadsheets that were used to calculate Plaintiff's scores for the RIF (Bates-stamped 1248–49, 1260).  The first grouping of worksheets is responsive to Plaintiff's RPD No. 80; the latter spreadsheets, particularly Bates-stamped 1260, are responsive to RPD No. 83.  However, in these documents, all employees' names, and parts of their "Team Member Numbers" (a unique identifier that Plaintiff proffers does not appear to be related to any private information), are all redacted.  Plaintiff seeks an order compelling further responses to her RPD Nos. 80 and 83, in which this information is not redacted.  (ECF No. 22.)

1.   At-Issue Requests for Production

The text of the at-issue RPDs and objections thereto are set forth as follows.

**a.   RPD 80**

> All "Reduction In Force Analysis" worksheets, for Region number 47.

(ECF No. 22-1 at 6.)

**b.   RPD 83**

> All DOCUMENTS used to calculate PLAINTIFF'S "TM Position Productivity Rating" score for the 2020 reduction in force.

(ECF No. 22-1 at 7.)

2.   Defendant's Objections

With respect to the aforementioned RPDs, Defendant provided the following nearly-identical responses (with the only difference identified in brackets) and objections:

> Objection. The request is vague, ambiguous, is overbroad in both time and scope, seeks information that is confidential, private, and proprietary, and as such violates Responding Party's constitutional privacy and trade secret rights, calls for documents that are protected from disclosure by the attorney-client privilege and/or the

attorney work product doctrine, violates financial privacy rights, violates third party privacy, violates employee privacy, seeks privileged documents, is incomplete in and of itself because it references other documents, seeks documents that are irrelevant and not proportional to the needs of the case, seeks confidential commercial information, is duplicative of other requests served by Plaintiff, is unduly burdensome, harassing, and oppressive, and fails to identify the documents sought with reasonably specificity in violation of FRCP 34.   Subject to and without waiving the aforementioned objections, Responding Party answers as follows:

[*with respect to RPD 80 only*: Propounding Party's request for all documents related to "Region number 47" is overbroad. Responding Party will produce documents as to District 532 only.] Responding Party agrees to produce all relevant, non-privileged documents that are responsive to this request that are within its possession, custody, and control with its responses to Plaintiff's Request for Production of Documents, consistent with the objections above. As discovery in this case is continuing, Responding Party reserves the right to amend and/or supplement this request.

(ECF No. 22-1 at 6–8.)

In supplementing its responses to RPD 83, Defendant additionally provided the following supplemental objections and response:

Objection. The request is vague, ambiguous, is overbroad in both time and scope, seeks information that is confidential, private, and proprietary, and as such violates Responding Party's constitutional privacy and trade secret rights, calls for documents that are protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine, violates financial privacy rights, violates third party privacy, violates employee privacy, seeks privileged documents, is incomplete in and of itself because it references other documents, seeks documents that are irrelevant and not proportional to the needs of the case, seeks confidential commercial information, is duplicative of other requests served by Plaintiff, is unduly burdensome, harassing, and oppressive, and fails to identify the documents sought with reasonably specificity in violation of FRCP 34. Subject to and without waiving the aforementioned objections, Responding Party answers as follows:

Responding Party previously produced all documents responsive to this request that are within its possession, custody, and control. As discovery in this case is continuing, Responding Party reserves the right to amend and/or supplement this request.

(ECF No. 22-1 at 8–9.)

3.     Parties' Positions and Ruling

The general arguments with respect to whether Plaintiff's requests are reasonably

calculated to lead to admissible evidence based on Plaintiff's need for "comparator" evidence are the same as previously articulated with respect to the dispute over Plaintiff's SIs, and are unavailing for the same reasons already discussed by the Court.

Similarly, with respect to Defendant's objections based on privilege and privacy, the Court finds these objections are unfounded for the reasons previously articulated — namely, the existence of a protective order. The majority of Defendant's remaining objections, such as vague, ambiguous, overbroad, duplicative, is unduly burdensome, harassing, and oppressive — again, impermissibly boilerplate, see Fed. R. Civ. P. 34(b)(2)(B), (C); Burlington N. & Santa Fe Ry. Co., 408 F.3d at 1149 — are unavailing. For example, as to Defendant's vagueness, ambiguity, or overbreadth objections, Plaintiff counters that she has identified by Bates-number the documents that should be produced without redactions. Furthermore, the Court cannot ascertain any significant burden to Defendant to simply produce the unredacted copies of documents it has already gathered and prepared in anticipation of its original responses to Plaintiff's RPDs.

However, the Court does find persuasive Defendant's argument that the names of the other employees within Mr. Miramontez's district and their performance statistics are not relevant to Plaintiff's comparator analysis. Defendant has already provided Plaintiff with (i) each employee's job title, (ii) a (partial) unique identifier for each employee, (iii) the evaluation history, tenure, sales/productivity data (matched to their unique identifier) used to calculate the objective measures for the RIF, and (iv) the disciplinary/culture evaluations (matched to that unique identifier) used to calculate the culture rating for the RIF — which Defendant proffers is sufficient for Plaintiff's comparator evidence analysis. (ECF No. 22-1 at 20–21.) Defendant argues the names of the employees do nothing to establish whether the employees are similarly situated to Plaintiff. The Court agrees. If Defendant had redacted personal identifying information such as each employee's date of birth, the Court would have agreed that such information must be provided as it is directly relevant to Plaintiff's age discrimination claim and useful for her comparator data. However, employee date of birth does not appear to exist as a factor on the identified spreadsheets, redacted or otherwise. As such, no further responses to the at-issue RPDs are required at this time.

For these reasons, Plaintiff's motion for further responses to her RPD Nos. 80 and 83 shall be denied.

## V.

## REQUEST FOR SANCTIONS

Plaintiff seeks sanctions in the total amount of $4,865.00, for the time required to prepare both motions.  (ECF No. 21, 21, 23.)

Plaintiff argues the information requested in her discovery requests is plainly relevant to her claims and permitted to establish a showing of bias.  She proffers it is not up to Defendant to decide that she may not review important statistical evidence of discrimination, which was detailed in her meet and confer letter to Defendant.  Consequently, Defendant's continued refusal to produce supplemental responses as to these requests is unjustified and warrants monetary sanctions.  (ECF No. 21-1 at 21; ECF No. 22-1 at 18–19; ECF No. 23.)

Defendant argues it acted reasonably at all stages of production.  Initially, it produced RIF data for Plaintiff only; however, following meet and confer efforts, Defendant supplemented its responses with data for the entire store, and subsequently produced data for all team members in the entire district.  Defendant argues its refusal to provide further data for all employees statewide was based on legitimate arguments that such information could not be used as comparator data and was therefore unnecessarily overly burdensome.  As such, Defendant's conduct arose from a "good faith dispute" and does not warrant sanctions.  (See ECF No. 21-1 at 22, 29; ECF No. 22-1 at 23–24.)

The Court finds Defendant has the better argument.  First, the Court notes it is ultimately granting only one of Plaintiff's motions to compel.  Furthermore, the Court finds Defendant made reasonable efforts after each of the parties' meet and confer communications, to supplement its responses to Plaintiff.  The Court also finds, in general, Defendant's objections based on purported relevancy and burden tend to demonstrate a good faith dispute that does not warrant sanctions.  Accordingly, the Court shall deny Plaintiff's request for sanctions at this time, without prejudice.

///

**VI.**

**CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's request to seal (ECF No. 20) is DENIED, without prejudice. The Clerk of the Court shall RETURN any documents submitted in connection with the request to seal to the submitting party pursuant to Local Rule 141(e)(1);

2. Plaintiffs' motion to compel further responses to interrogatories (ECF No. 21) is GRANTED. Defendant O'Reilly Auto Enterprises, LLC shall provide further responses, without objection, to Special Interrogatories Nos. 49–52 **within thirty (30) days** of issuance of this order;

3. Plaintiffs' motion to compel further responses to requests for production of documents (ECF No. 22) is DENIED, without prejudice;

4. Plaintiffs' request for sanctions in the form of attorneys' fees (ECF Nos. 21, 22, 23) is DENIED at this time, without prejudice; and

5. The hearing on Plaintiffs' motions to compel set for May 25, 2022, at 10:00 a.m. in Courtroom 9, is VACATED.

IT IS SO ORDERED.

Dated:   __May 24, 2022__

_____
UNITED STATES MAGISTRATE JUDGE